629 A.2d 142

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Brian Dale WHITEHEAD, Jr.**

Superior Court of Pennsylvania.

Argued April 13, 1993.

Filed Aug. 3, 1993.

Henry L. Borger, Asst. Dist. Atty., Warren, for Com., appellant.

Barry L. Smith, Warren, for appellee.

Before WIEAND, POPOVICH and HESTER, JJ.

HESTER, Judge.

The Commonwealth appeals from the October 12, 1992 order suppressing statements made by Brian Dale Whitehead, Jr., appellee, in which he admitted to drinking before a traffic accident, as well as the results of the blood test taken after he allegedly drove under the influence of alcohol. The Commonwealth contends that this suppression order will terminate or substantially hinder its prosecution. The Commonwealth further contends that the trial court misapprehended the legal consequences of the evidence adduced by the prosecution at the suppression hearing. We affirm in part and reverse in part.

Preliminarily, we note that since the Commonwealth is the party filing this appeal, it is entitled to appellate review when it has certified in good faith that the suppression order, if given effect, would substantially handicap or terminate its prosecution. The Commonwealth has made that certification. Therefore, we conclude we have jurisdiction to entertain this appeal. *See Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985); *Commonwealth v. Toanone*, 381 Pa.Super. 336, 553 A.2d 998 (1989).

Our standard of review for orders suppressing evidence after a hearing is clear. In *Commonwealth v. Toanone*, 381 Pa.Super. 336, 340, 553 A.2d 998, 999 (1989), we stated:

> In reviewing the findings of a suppression order where the Commonwealth is appealing, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted. *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137 (1983) (plurality opinion). While we are bound by the lower court's findings of fact if supported by the record, we are not bound by the court's legal conclusions which are drawn from the facts of the case. *Commonwealth v. Cortez*, 507 Pa. 529, 491 A.2d 111 (1985).

Viewed in this manner, the record reveals the following.

On April 22, 1992, Sheffield Township Police Officer George R. Jashurek received a radio dispatch from the Warren County Sheriff's office advising of a vehicular accident. When Officer Jashurek arrived at the scene, he discovered two trucks damaged as the result of a head-on collision. One truck was on the side of the road and the other was located approximately forty feet in a nearby wooded area. He testified that both drivers were injured and that he detected the odor of alcohol on the breath of each driver. He further noted that appellee's speech was slurred and his eyes were glassy and bloodshot. Officer Jashurek urged appellee to enter the ambulance since he was bleeding but appellee repeatedly insisted that he first needed to check his truck. Meanwhile, Officer Jashurek was occupied fully with ensuring that the other driver also received prompt medical attention. Therefore, Officer Jashurek delayed investigating the scene until after the injured motorists were taken to the hospital. He subsequently recovered a six-pack of sixteen ounce beer within a thirty foot radius of appellee's vehicle, and he noted that there was blood on one of the beer cans. The other vehicle was not located near appellee's truck.

Based on his observations at the scene, Officer Jashurek went to the Warren County General Hospital. He testified

that he did so both because he had not obtained appellee's license, registration, and insurance information and because he suspected appellee of driving under the influence. During his investigation, he asked appellee how the accident occurred and whether he had been drinking. Appellee conceded he had two beers and some wine prior to the accident. Thereafter, Officer Jashurek placed appellee under arrest premised on his observations at the scene including: appellee's staggering gait, the strong odor of alcohol, his glassy eyes, the open cans of beer, and, in addition, appellee's statement. Appellee thereafter signed a consent form granting permission to test his blood. The result revealed a blood alcohol content of .17 percent.

■ Appellee filed a suppression motion claiming that he was not properly accorded his *Miranda* rights before being questioned. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He further asserted that he illegally was subjected to a custodial interrogation prior to being given his *Miranda* rights. On cross-examination, Officer Jashurek stated he gave appellee his *Miranda* warnings. Thereupon, the following colloquy took place regarding appellee's questioning at the hospital:

THE COURT: Officer, I want to make it clear, did you say, you did or did not, read the *Miranda* Rights to the Defendant at the hospital?

THE WITNESS: After I had gotten the information and I placed him under arrest then I read him his *Miranda* rights.

THE COURT: Well, have I got this right, you arrested him for driving under the influence?

THE WITNESS: Right.

THE COURT: Then you read him the Rights?

THE WITNESS: Yes, sir.

THE COURT: And you questioned him before you read him the Rights about drinking prior to the accident, his statement made at that time drinking wine and a couple of beers?

THE WITNESS: Yes, I asked him for his driver's license, registration, and insurance and basically what happened at the accident and if he had been drinking.

THE COURT: He tells you what he told you then after that you read him *Miranda* rights and arrested him; is that right? Have I got that sequence correct?

THE WITNESS: I arrested him, then read him his Miranda rights.

THE COURT: Thank you. You may step down.

MR. BORGER: The Commonwealth rests.

MR. SMITH: Defendant has no witnesses to present, your Honor.

Notes of Testimony, "N.T.", 10/12/92 at 14–15. Thereupon, the trial court suppressed appellant's statements as a result of not being given his *Miranda* rights before being questioned while in custody.

The Commonwealth first contends that *Miranda* warnings did not apply since the defendant must be both in custody and under interrogation. *Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367 (1991). It notes that these are two separate requirements and *Miranda* applies only when they both are present. *Id.* In this instance, the Commonwealth avers that appellant was not in custody. The Commonwealth argues that custody is defined as physically depriving one of freedom in a significant way so that he is aware his freedom is restricted.

The Commonwealth notes that there were inadequate reasons for appellee to conclude that he was in custody. When Officer Jashurek questioned appellee at the hospital, it began as a general inquiry. During this time, appellee was receiving medical assistance and he never was informed he was not free to leave. There was nothing other than the presence of Officer Jashurek to suggest appellee was in custody. Furthermore, the Commonwealth notes that merely being the focus of an investigation no longer is sufficient to mandate giving *Miranda* warnings. *See Commonwealth v. Schoellhammer*, 308 Pa.Super 360, 454 A.2d 576 (1982) (*Miranda* applies only where one is in custody and subjected to coercive

interrogation). Consequently, the Commonwealth argues that the failure to advise appellee of his *Miranda* rights prior to eliciting statements from him does not warrant suppression of these statements since *Miranda* was not applicable as appellee was not in custody.

In *Commonwealth v. Chacko*, 500 Pa. 571, 577–79, 459 A.2d 311, 314 (1983) (citations omitted), the Pennsylvania Supreme Court delineated what constituted custodial interrogation:

> The test for determining whether a suspect is being subjected to custodial interrogations as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation....
>
> ....
>
> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation.

Applying this authority to the instant facts, we agree with the trial court's conclusion that a reasonable individual being questioned by Officer Jashurek while on a hospital gurney would conclude that the inquiry was custodial. *See Commonwealth v. D'Nicuola*, 448 Pa. 54, 292 A.2d 333 (1972) (question-

ing defendant while confined to a hospital room and where his freedom of action is restricted was "custody," which coupled with the accusatory nature of the interview, compelled the conclusion that his constitutional rights were violated when he was not given the *Miranda* warnings before commencing the custodial interrogation); *see also Commonwealth v. Jefferson*, 423 Pa. 541, 226 A.2d 765 (1967) (custodial interrogation is not limited to the police station). Instantly, Officer Jashurek admitted on cross-examination that when he questioned appellee, it was in connection with a criminal investigation. He also admitted that he previously had gathered evidence to support such a proceeding. Moreover, the officer appeared at the hospital on his own initiative.

While the initial questions were general, we agree that the clear intent was to obtain incriminating admissions while appellee was not freely capable of leaving and was fearful of not cooperating. The statement was made after prompting and followed questions designed to obtain incriminating statements. No formal declaration of arrest is required in order for an individual to conclude that he is in custody. *Commonwealth v. McGrath*, 151 Pa.Commonwealth 1, 617 A.2d 400 (1992).

We find the case cited by the Commonwealth, *Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367 (1991), is distinguishable since the suspect's statements in that case were not elicited with the intent to obtain admissions. Here, in contrast, the suppression court clearly found that Officer Jashurek sought an admission as a result of the questioning since he already had gathered information for the purpose of placing appellee under arrest. It also found that appellee was questioned while he was in custody. Factual findings of a suppression court are upheld on appeal if they are supported by the record. *Commonwealth v. Toanone, supra*. In this instance, we find the court's findings are supported by the record. Accordingly, we conclude that trial court properly suppressed the statements in which appellant admitted to driving after consuming alcohol.

■ Next, the Commonwealth contends the court erred in suppressing the blood alcohol test results. It contends that there was sufficient, independent probable cause to arrest appellee and to seek his consent for a blood test. It notes that even though Officer Jashurek did not observe appellee driving, he observed his unsteady gait, his glassy eyes, slurred speech, and breath smelling of alcohol. An accident involving injuries had occurred and an open beer can was found near appellee's truck. The Commonwealth contends that less evidence than this has been held sufficient to constitute probable cause and to support a request for a blood test. *Commonwealth v. Pelkey*, 349 Pa.Super. 373, 503 A.2d 414 (1985) (officer had sufficient probable cause to request a blood test based on an accident involving serious injuries and the smell of alcohol on the suspect's breath). Further, appellee signed a consent form to the blood test.

■ The trial court nevertheless suppressed the blood test since it determined that without the evidence contained in appellee's statements, there was insufficient evidence of driving under the influence. We disagree. While we are bound by a suppression court's factual determinations, we are not bound by its legal conclusions. *Commonwealth v. Cortez, supra.* Clearly, Officer Jashurek's observations prior to appellee's statement were sufficient to support probable cause to arrest appellee. There was an accident involving personal injuries, the odor of alcohol on appellee's breath, and the officer's observations of appellee's glassy eyes and unsteady gait. Finally, Officer Jashurek recovered open beer cans and observed blood on a beer can. *See Commonwealth v. Pelkey, supra* (smell of alcohol following an accident constituted sufficient probable cause for arrest). Consequently, police were entitled to obtain a sample of appellee's blood after establishing probable cause since a blood test is a reasonable search for fleeting evidence regardless of whether he consented. *See Commonwealth v. Ellis*, 415 Pa.Super. 220, 608 A.2d 1090 (1992); *Commonwealth v. Hipp*, 380 Pa.Super. 345, 551 A.2d 1086 (1986).

Order affirmed in part and reversed and remanded in part. Jurisdiction relinquished.