**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Dodd M. PERRY, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 29, 1998.
Filed April 17, 1998.

Michael Morrone, Williamsport, for appellant.

Thomas A. Marino, Dist. Atty., Williamsport, for Com., appellee.

Before CAVANAUGH, EAKIN and STEVENS, JJ.

STEVENS, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Lycoming County. Appellant Dodd Perry was found guilty of driving under the influence of alcohol and driving under suspension, DUI related. Appellant claims that the statements he made to Pennsylvania State Police Trooper, James McCormick, Jr., were the product of an illegal custodial interrogation, due, in part, to the fact that questioning occurred while Appellant was being treated in the emergency room. Therefore, Appellant asserts, the statements should have been suppressed. We affirm.

The standard of review in a motion to suppress is clear: When reviewing the suppression court's denial of a motion to suppress, we must first ascertain whether the record supports the suppression court's factual findings. *See Commonwealth v. Dangle,* 700 A.2d 538 (Pa.Super.1997). We are bound by the suppression court's findings if they are supported by the record, and may only reverse the suppression court if the legal conclusions drawn from the findings are in error. *Id.*

With this standard of review in mind, the record reveals the following: Appellant was involved in an automobile accident on the morning of March 1, 1996. The trooper responded to the accident and noticed Appellant, but did not speak to him. The trooper did speak to an emergency medical technician (EMT) who was on the scene and who indicated to the trooper that he noticed the odor of alcohol on Appellant's breath. Because Appellant suffered injury from the accident, he had been taken to an area hospital.

Trooper McCormick, following standard police procedure, proceeded to the hospital to further investigate the accident. Upon his arrival at the hospital, the trooper located Appellant and questioned him about the accident. During questioning, Appellant was lying on his back on a gurney, wearing a neck brace, and had intravenous tubes in his arms. Hospital staff, along with Appellant's mother and fiance, were present intermittently during the questioning.

While questioning Appellant, the trooper noticed an odor of alcohol on Appellant's breath. The trooper asked Appellant whether he was the driver of the automobile, to which he responded, "Yes." Trooper McCormick then asked Appellant if he had been drinking, and Appellant responded that he had "five to six Molsen beers at the Pub" prior to the accident. The trooper then placed Appellant under arrest and read him *Miranda*[1] warnings. Subsequently, the trooper obtained a search warrant for Appellant's blood alcohol test results. Appellant's blood alcohol content was measured at .12 percent, which was greater than the legal limit.

On March 22, 1996, in connection with the accident of March 1, 1996, Appellant was charged with the offenses of driving under the influence of alcohol,[2] careless driving,[3] driving a vehicle at an unsafe speed,[4] and driving while operating privileges were suspended or revoked.[5] In pre-trial motions, Appellant moved to suppress the statements he had made to the trooper at the hospital because the questioning occurred during what Appellant termed "custodial interrogation" prior to him being properly read the required *Miranda* warnings.

As a result of the questioning, the trial court determined that the trooper had probable cause to obtain a search warrant for blood test results, from which Appellant's blood alcohol content was determined. The trial court found that the trooper's questioning of Appellant was proper and that the statements made by Appellant were admissible. On January 13, 1997, Appellant was tried in the Court of Common Pleas of Lycoming County, and was found guilty of driving under the influence of alcohol and driving while his operating privileges were suspended or revoked, DUI related. This appeal followed.

The sole issue presented on appeal is whether Appellant was subject to "custodial interrogation" while questioned in the emergency room which would have triggered the need for *Miranda* warnings. Appellant argues that due to his immobilization in the hospital he was "in custody" when questioned by Trooper McCormick.[6] Additionally, Appellant asserts there were several indications that he did not want to answer the questions. Appellant further supports his claim of custodial interrogation via the testimony of his mother and fiance, who testified that they asked the trooper to leave Appellant alone several times.

The trooper testified as a "following up" to his automobile accident investigation, he proceeded to the hospital and questioned Appellant, which was standard practice by troopers. The trooper further testified that at no time during the questioning did Appellant ask for the questioning to stop or ask the trooper to leave prior to *Miranda* warnings

1. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

2. 75 Pa.C.S.A. § 3731(a)(4) & (5).

3. 75 Pa.C.S.A. § 3714.

4. 75 Pa.C.S.A. § 3361.

5. 75 Pa.C.S.A. § 1543(b)(1).

6. It should be noted that there are two separate requirements to show custodial interrogation. The individual must be "in custody" and must be interrogated. There is no issue in this case in regard to interrogation. The sole issue is whether Appellant was "in custody."

being issued. Trooper McCormick testified that the arrest was incident to a routine traffic accident investigation.

■ The test for determining whether a suspect is "in custody" which necessitates *Miranda* warnings is whether he is physically deprived of his freedom in any significant manner or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. *See Miranda, supra.* *Miranda* warnings are necessary only when a suspect is subject to actual "custodial interrogation." The fact that a defendant was the focus of an investigation is a relevant factor in determining whether he was "in custody." However, the fact that a police investigation has focused on a particular person no longer automatically requires *Miranda* warnings. *Beckwith v. United States,* 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1976); *Commonwealth v. Holcomb,* 508 Pa. 425, 440, 498 A.2d 833, 840 (1985), cert.denied, 475 U.S. 1150, 106 S.Ct. 1804, 90 L.Ed.2d 349 (1986). However, a suspect may be "in custody" even in instances where the police have not taken him to a police station or formally arrested him. *Commonwealth v. Fisher,* 466 Pa. 216, 220, 352 A.2d 26, 28 (1976).

This Court, in *Commonwealth v. Fento* 363 Pa.Super. 488, 526 A.2d 784 (1984), found that an officer's routine questioning of a driver, while the driver was being treated at the hospital, was not tantamount to custodial interrogation requiring *Miranda* warnings. *Fento,* supra. Where the appellee was intoxicated, injured and awaiting treatment in a hospital emergency room, questioning by a police officer was proper where the questioning was the result of proper police procedure. *Commonwealth v. Fento,* 526 A.2d at 789. The Superior Court examined the circumstances surrounding the questioning of the appellee where, during questioning, hospital personnel were present and importantly, we concluded "... that the appellee's detention while in the emergency room area of the hospital was purely the result of his medical condition at that point as opposed to any action on the part of the police." *Id.*

In the matter currently before us, we find Appellant in a similar situation. Appellant was surrounded by not only medical staff, but also by his family. The record does not indicate that the questioning by Trooper McCormick was lengthy. There is an indication that Appellant's mother, at some point, told the trooper to end the questioning, although it is unclear at what point this occurred. The trooper testified that at no point prior to Appellant receiving *Miranda* warnings, did Appellant ask for the questioning to stop. Further, under *Fento, supra,* the fact that Appellant was being treated in an emergency room does not *de facto* place him in custody for purposes of questioning.

Appellant relies on a decision by this Court in *Commonwealth v. Whitehead,* 427 Pa.Super. 362, 629 A.2d 142 (1993). In *Whitehead,* the Commonwealth appealed the order of the Court of Common Pleas of Warren County, which suppressed statements made by the appellee and the results of a blood alcohol test. *Commonwealth v. Whitehead,* 629 A.2d at 142. This Court found that Appellee Whitehead's statements were inadmissible because they were the result of a "custodial interrogation" before Appellant was informed of his Miranda rights. *Id.* 629 A.2d at 144–145.

In *Whitehead,* this Court focused on the intent of the officer in questioning the appellee in the hospital. Testimony in that case indicated that the officer had collected evidence at the scene, such as a six pack of beer, which indicated that the appellee had been drinking. Further, the officer testified that he questioned the appellee in connection with a criminal investigation, not a routine traffic accident investigation. *Commonwealth v. Whitehead,* 629 A.2d at 145.

■ The overriding concern of this Court is to determine what was the reasonable belief of the accused during the questioning. Although a factor, the motive of the trooper, specifically, whether the accused was the focus of a criminal investigation, is not the central issue. *See Holcomb, supra.*

■ In light of the decision in *Holcomb, supra,* evidence indicates that Appellant was not faced with a situation where he could reasonably believe he was unable to end questioning at his discretion. All facts indicate that Appellant was not pressured to answer questions nor was his environment conducive to an interrogation. His family was present as were medical personnel. No

evidence indicates that the officer pressured Appellant to answer questions, and, from all indications, his statements were voluntary.

Additionally, the trooper clearly indicated that he proceeded to the hospital to question Appellant regarding the accident, which was standard police procedure. In gathering information in regard to the accident the trooper noticed "first hand" the odor of alcohol on Appellant's breath and questioned him in that regard. As such, Appellant has failed to show this Court that questioning by the trooper was consistent with that of a criminal investigation. The trial court properly admitted evidence of the questioning of Appellant at the hospital and subsequent information regarding the blood alcohol content test for which the trooper obtained a search warrant.

Affirmed.