Commonwealth v. Hausman

C.P. of Lehigh County, no. 2001/3672.

*Richard D. Director, senior deputy district attorney,* for plaintiff.

*Brian J. Collins,* for defendant.

STEINBERG, *J.,* May 22, 2002—After being treated at the scene of a two-car accident in the City of Allentown, the defendant has been charged with driving under the influence of a controlled substance[1] and possession of drug paraphernalia.[2] The defendant motions to suppress the statements she made at the scene and the evidence recovered. The defense also challenges the Commonwealth's prima facie case by petitioning for a writ of habeas corpus, and motions to preclude the Commonwealth's expert from testifying to the degree of the defendant's impairment due to her use of heroin.

At an evidentiary hearing on defendant's motion, the Commonwealth presented the testimony of Michael Matchette, a seven-year member of the Allentown Emergency Medical Service, Dr. Dean Fritch, a forensic toxicologist, and Officer Michael Billera, a six-year member of the Allentown Police Department. Based on this testimony, the transcript of the preliminary hearing,[3] and the legal arguments of the parties, we make the following findings of fact and conclusions of law.

On August 18, 2001, at approximately 10:23 p.m., Officers Kristopher Vogt and Michael Billera responded to the scene of a two vehicle accident at 40th and Tilghman Street in the City of Allentown.[4] The defendant's car had rear-ended another vehicle that was

---

1. 75 Pa.C.S. §3731(a)(2).

2. 35 P.S. §780-113(a)(32).

3. Commonwealth's exhibit 4.

4. Notes of testimony, preliminary hearing, October 18, 2001 (N.T.) at 3.

4

stopped at a red light.[5] The defendant and her sister were trapped in their vehicle, which had sustained major front-end damage, and were being attended by paramedics.[6] The defendant was in the front driver's seat, and although she was covered in blood, she was conscious.[7]

After Emergency Medical Technician Michael Matchette treated the defendant, stabilized her, and placed her in a cervical collar, he asked if she had consumed any alcohol.[8] The defendant indicated that she had not been drinking, but said that she had used heroin,[9] although she could not remember exactly how many hours earlier.[10] The defendant was then removed from the vehicle, strapped to a backboard and treated in the ambulance, where Officer Billera asked her if she had consumed any alcohol or drugs. She repeated to Officer Billera that she had used heroin, and admitted that she had a syringe in her pants pocket.[11] A pair of scissors was utilized to cut the defendant's pants pocket, and a bank envelope wrapped around an uncapped syringe was recovered.[12] The defendant was then transported to the hospital where she was treated and blood was drawn. The defendant's blood tested positive for heroin, yielding a result of 325 nanograms per milliliter total morphine.[13]

---

5. *Id.* at 30.
6. *Id.* at 3.
7. *Id.* at 15.
8. *Id.* at 15-16.
9. *Id.*
10. N.T. at 27.
11. *Id.* at 17.
12. *Id.* at 17-18.
13. *Id.* at 4, 8.

The defense motions to suppress the defendant's admission that she used heroin on the night in question, arguing that she was not given *Miranda* warnings. The Fifth Amendment protection against self-incrimination guaranteed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is only triggered when an individual is subject to custodial interrogation. *Commonwealth v. Thompson,* 778 A.2d 1215, 1221 (Pa. Super. 2001). Officer Billera's questioning of the defendant in the ambulance[14] did not necessitate *Miranda* warnings, as the defendant was not in custody or subject to interrogation.

"[P]olice detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest." *Commonwealth v. Mannion,* 725 A.2d 196, 200 (Pa. Super. 1999). The standard for determining whether a suspect

---

14. We also note that the defendant's initial admission to EMT Matchette that she had used heroin was not in response to a custodial interrogation. Spontaneous, volunteered statements which are not the result of custodial interrogation are not subject to suppression. *Commonwealth v. Fisher,* 564 Pa. 505, 769 A.2d 1116 (2001). "When a defendant gives a statement without police interrogation, we consider the statement to be 'volunteered' and not subject to suppression for lack of *Miranda* warnings. . . . Interrogation is police conduct 'calculated to, expected to, or likely to evoke admission.' " *Commonwealth v. Brown,* 551 Pa. 465, 481, 711 A.2d 444, 451 (1998) (citations omitted). See also, *Commonwealth v. Gibson,* 553 Pa. 648, 720 A.2d 473 (1998), *cert. denied,* 528 U.S. 852, 120 S.Ct. 132, 145 L.Ed.2d 819 (2000); *Commonwealth v. Baez,* 554 Pa. 66, 720 A.2d 711 (1998), *cert denied,* 528 U.S. 827, 120 S.Ct. 78, 145 L.Ed.2d 66 (1998). The defendant initially told Mr. Matchette that she had used heroin in response to his question, "Have you consumed any alcohol?" She was neither in custody nor subject to interrogation, but rather volunteered the information.

has been subject to custodial detention or the functional equivalent of a formal arrest is an objective one based upon a totality of the circumstances. *Commonwealth v. Gwynn,* 555 Pa. 86, 98, 723 A.2d 143, 148 (1998). The Pennsylvania Superior Court has stated in *Commonwealth v. Turner,* 772 A.2d 970 (Pa. Super. 2001):

"The factors that the court considers to determine whether there has been a custodial interrogation include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions." 772 A.2d 970, 973 (Pa. Super. 2001).

Although the defendant was strapped to a backboard and suffering from accident-related injuries, she was not in custody when Officer Billera asked her if she had consumed any alcohol or drugs. In *Commonwealth v. Perry,* 710 A.2d 1183, 1186 (Pa. Super. 1998), the court found that questioning by a police officer of the defendant, who was intoxicated, injured and awaiting treatment in a hospital emergency room, was proper where the questioning was the result of proper police investigative procedure. The court held that the questioning was not lengthy and the defendant's presence in an emergency room did not de facto place him in custody. *Id.*

In *Commonwealth v. Fento,* 363 Pa. Super. 488, 494, 526 A.2d 784, 787 (1987), the court also held that the defendant was not in custody during his interview with a police officer in his hospital room. The court focused on the fact that "the only restraints placed on appellee

were created by his own medical condition as the result of the accident rather than any coercive action on the part of [the trooper]. *Any restraint applied in this case was for medical purposes by medical personnel rather than investigative purposes by police officers." Id.* (emphasis added) As in *Fento,* she was not in custody, and *Miranda,* the defendant in the case sub judice could have expected her detention to last only as long as medically necessary, see *id.,* and was restrained only by her medical condition. For those reasons, we find that she was not in custody and *Miranda* warnings were not necessary.[15]

---

15. We also find that the question asked of the defendant, "Have you had any drugs or alcohol?" was not designed to elicit an incriminating remark, and therefore did not constitute interrogation. See *Commonwealth v. Thompson,* 778 A.2d 1215 (Pa. Super. 2001); *Commonwealth v. Turner,* 772 A.2d 970, 974 (Pa. Super. 2001); *Commonwealth v. Whitehead,* 427 Pa. Super. 362, 368, 629 A.2d 142 (1993). In order for *Miranda* warnings to be required in a custodial setting, the person detained must be subjected to questioning that is reasonably likely to elicit an incriminating response. *Thompson, supra* at 1221; *Turner, supra* at 974; *Commonwealth v. Whitehead,* 427 Pa. Super. 362, 368, 629 A.2d at 145. Specifically, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perception of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. *A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation." Id.* (emphasis added)

When Officer Billera asked the defendant if she had consumed alcohol or drugs, he was conducting an investigation, not interrogating the

The defendant's argument that the physical evidence was the fruit of an unlawful custodial interrogation fails in light of our determination that her statements are admissible and that she volunteered the information that she had a syringe in her pants pocket. Additionally, the defendant's admission to heroin use defeats her argument that the police had no probable cause or reasonable suspicion to test her blood for controlled substances. Therefore, we are left to determine whether the Commonwealth has presented a prima facie case, and whether their expert, Dr. Fritch, can testify as to whether the defendant's driving was impaired from her use of heroin.

At the pretrial motions hearing, the Commonwealth presented evidence that the defendant's blood tested positive for heroin, yielding a result of 325 nanograms per milliliter total morphine.[16] The defense motioned to preclude the Commonwealth's witness, Dr. Dean Fritch, a forensic toxicologist, from interpreting those results at trial, arguing that "[a]ny opinion which seeks to interpret and extrapolate a certain level of a controlled substance metabolite in the blood stream back to the time of operation of a vehicle to determine a level of impairment or intoxication to a degree rendering the driver incapable of safe driving does not meet the general acceptance standard (*Frye* test) for scientific evidence. . . ." Defense omnibus pretrial motion at ¶12. Although the defense cites the test set forth in *Frye v.*

defendant with an eye towards charging her with a crime. Officer Billera was merely doing his job as a police officer investigating an accident scene. For that reason, *Miranda* warnings were not necessary.

16. *Id.* at 4, 8.

*United States,* 293 F. 1013 (D.C. Cir. 1923), a full *Frye* hearing was not requested in the motion or at the pretrial hearing.

We agree with the defense that there is no standard in Pennsylvania for the level of a controlled substance in the blood that would render a person incapable of safely operating her vehicle.[17] While .10 percent blood alco-

---

17. Nevada is the only state in this country that has adopted a standard for the level of a controlled substance in the blood which would render one incapable of safe driving. See Nev. Rev. Stat. 484.379(3):

"It is unlawful for any person to drive or be in actual physical control of a vehicle on a highway or on premises to which the public has access with an amount of a prohibited substance in his blood or urine that is equal to or greater than:

| Prohibited substance | Urine Nanograms per milliliter | Blood Nanograms per milliliter |
| --- | --- | --- |
| (a) Amphetamine | 500 | 100 |
| (b) Cocaine | 150 | 50 |
| (c) Cocaine metabolite | 150 | 50 |
| (d) Heroin | 2,000 | 50 |
| (e) Heroin metabolite: | | |
| (1) Morphine | 2,000 | 50 |
| (2) 60 monoacetyl morphine | 10 | 10 |
| (f) Lysergic acid diethylamide | 25 | 10 |
| (g) Marijuana | 10 | 2 |
| (h) Marijuana metabolite | 15 | 5 |
| (i) Methamphetamine | 500 | 100 |
| (j) Phencyclidine | 25 | 10" |

We must also note that this statute has been criticized because "the low drug thresholds included in the legislation would result in DUI convictions for people who were not impaired." See Peter O'Connell, *Impairment Statute Useless, Attorney Says,* Las Vegas Review-Journal, October 19, 2000 *available at* http://www.lvrj.com/lvrj_home/2000/Oct-19-Thu-2000/news/14639211.html. Additionally, in the Nevada case of *State v. Williams,* 50 P.3d 1116 (2002) the defendant was found guilty based on the level of marijuana found in her blood, which exceeded the

hol concentration is the standard set in Pennsylvania for the amount of alcohol in the blood which would render a person incapable of safely driving their vehicle, see 75 Pa. C.S. §3731(a)(4)(i) ("A person shall not drive, operate or be in actual physical control of the movement of a vehicle in any of the following circumstances . . . [w]hile the amount of alcohol by weight in the blood of an adult is 0.10 percent or greater"), no standard exists against which the defendant's blood test result of 325 nanograms per milliliter of morphine[18] can be measured. Therefore, we direct our inquiry to whether Dr. Fritch can generally testify as to the defendant's driving impairment based on the level of morphine in her blood.

We note that the standard by which we are measuring the admissibility of this expert testimony is different at this preliminary proceeding than it will be at trial. At a preliminary hearing, the Commonwealth need not prove its case beyond a reasonable doubt, but must only present a prima facie case. *Commonwealth v. Saunders,* 456 Pa. Super. 741, 745, 691 A.2d 946, 948 (1997), *appeal denied,* 550 Pa. 703, 705 A.2d 1307 (1997). Therefore, at this stage the mere introduction of the blood test is enough to prove a prima facie case, see *Commonwealth v. Rick,* 244 Pa. Super. 33, 366 A.2d 302 (1976) (chemist's report which would have been inadmissible on its own at trial was sufficient for a prima

---

limits set forth in the statute. However, the jury did not find that she was driving under the influence of drugs. See Peter O'Connell, *Guilty on Eight Counts: Williams Verdict,* Las Vegas Review-Journal, February 17, 2001, available at http://www.lvrj.com/lvrj_home/2001/Feb-17-Sat-2001/news/1547129.html.

18. See Commonwealth's exhibit 2.

facie case at preliminary hearing), and the Commonwealth will face a heavier burden in terms of getting their expert testimony admitted at trial. See *id.* at 36-37, 366 A.2d at 303-304 ("the difference in purpose between a preliminary hearing and a trial dictates a different enforcement of the rules of evidence."). Therefore, we do not preclude the Commonwealth from calling Dr. Fritch as an expert witness at trial to interpret the results of the morphine in the defendant's blood to formulate a basis for a scientifically acceptable opinion on driving impairment. Whether this testimony may be admitted under the *Frye* standard as set forth in *Commonwealth v. Topa,* 471 Pa. 223, 369 A.2d 1277 (1977), and its progeny is a question to be addressed at trial or a full *Frye* hearing. See *Rick, supra.* We do note, however, that the Commonwealth will have to introduce at a *Frye* hearing evidence of general acceptance of impairment levels pertaining to controlled substances, to wit, heroin, in the scientific disciplines. It will be incumbent upon the Commonwealth through the use of scientific texts, journals, or the testimony of experts to demonstrate that impairment is reached at the levels suggested by Dr. Fritch. The testimony introduced at the pretrial hearing[19] does not provide sufficient scien-

---

19. Dr. Fritch testified at the pretrial motions hearing that he based his expert opinion on several studies conducted in Belgium, Germany and Sweden. He also testified that based on his own familiarity with the drug, the defendant's judgment would be impaired at 200 nanograms per milliliter. However, he also testified that heroin is rapidly broken down first into six monoacydl morphine ("six mam") and then into morphine in a time period that can be as short as two hours, so he could not testify as to the level of morphine in the defendant's blood at the time of the accident.

12

tific support to allow this court to conclude that Dr. Fritch's conclusions have been generally accepted in the relevant scientific community, [20] or even supported by judicial authority. However, the Commonwealth is not required to do so until a full *Frye* hearing is held.

20. Pennsylvania Rule of Evidence 702 governs expert testimony on scientific matters and reads as follows:

*"Rule 702. Testimony by experts*

"If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise." Pa. R.E. 702.

However, the "[a]doption of Pa. R.E. 702 did not alter Pennsylvania's adoption of the standard in *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), which requires scientific evidence to have 'general acceptance' in the relevant scientific community." Comment to Pa. R.E. 702. The test for the admissibility of expert opinions on scientific matters was originally set forth in *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923), and was adopted in Pennsylvania in *Commonwealth v. Topa,* 471 Pa. 223, 369 A.2d 1277 (1977). The court in *Topa* held that "[the a]dmissibility of the [scientific] evidence depends upon the *general* acceptance of its validity by those scientists active in the field to which the evidence belongs." *Id.* at 231, 369 A.2d at 1281. The general consensus in Pennsylvania appellate case law is that the scientific methodology used *and* the conclusions reached by the expert must both be generally accepted in the scientific community. See *Thomas v. West Bend Co.,* 760 A.2d 1174, 1179 (Pa. Super. 2000) ("*Frye* applies to scientific evidence itself, not merely to the methodology underlying such evidence."); *Commonwealth v. Blasioli,* 552 Pa. 149, 153, 713 A.2d 1117, 1119 (1998)("both the theory and technique underlying novel scientific evidence must be generally accepted."); *Blum v. Merrell Dow Pharmaceuticals Inc.,* 705 A.2d 1314, 1322 (Pa. Super. 1997) (Scientific methodology and conclusions must mutually be scrutinized by the court to ensure that what might appear to the jury to be science is not in fact speculation in disguise.). See also, *Thomas v. West Bend, supra,* 760 A.2d at 1179 n.3. But, see *Trach v. Thrift Drug Inc.,* 46 D.&C.4th 231, 248 (2000) (holding that *either* the methods or conclusions reached by the expert must pass the *Frye* test).

Therefore, for the foregoing reasons, the defendant's omnibus pretrial motions must be denied.

## ORDER

And now, May 22, 2002, upon consideration of the omnibus pretrial motion of defendant Christine Hausman, and after a hearing on the motion, for the reasons stated in the accompanying memorandum opinion;

It is hereby ordered that the motion to suppress statements is denied;

It is further ordered that the motion to suppress physical evidence is denied;

It is further ordered that the motion to preclude expert testimony is denied without prejudice subject to a full *Frye* hearing;

It is further ordered that the petition for writ of habeas corpus is denied.