Filed 9/20/16  P. v. Livingston CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C076712 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F03017) |
| v. | |
| SAVANNA LIVINGSTON, | |
| Defendant and Appellant. | |

Defendant Savanna Livingston stands convicted by a jury on three counts:

Count one, driving under the influence of alcohol (DUI), in violation of Vehicle Code section 23152, subdivision (a).  (Except as otherwise set forth, statutory citations that follow are to the Vehicle Code.)

Count two, driving with a blood-alcohol level of .08 percent or higher in violation of section 23152, subdivision (b).

1

Count three, driving with a suspended license in violation of section 14601.2, subdivision (a), a misdemeanor.

The trial court found true that defendant had three prior DUI convictions and a prior conviction for driving with a suspended license.

On appeal, she contends the trial court prejudicially erred by admitting evidence of defendant's out-of-court statements and by denying her motion to suppress evidence obtained in her pre-arrest interaction with the police at the hospital. Defendant also claims the trial court prejudicially erred by failing to instruct the jury, sua sponte, on the prosecutor's misconduct while reading the stipulation. Further, if neither of these alone are found to be sufficient, defendant claims that the cumulative effect of the previous two errors require reversal. We conclude there was no error, and we affirm the judgment.

FACTS AND PROCEEDINGS

On the evening of April 17, 2013, defendant Savanna Livingston was alone, sleeping or passed out in the driver's seat of a Dodge Durango that was parked partially on the sidewalk and partially in the street on Wymark Drive in Elk Grove. Defendant smelled of alcohol and had an empty one-and-a-half liter bottle of wine and an empty 40-ounce can of Steel Reserve beer in the back of the car on the passenger's side. The keys were in the ignition; however, the ignition was off. Police testified that defendant was wearing her seatbelt but a witness testified that defendant was not. Police Officer Nathaniel Lange arrived at the location of the car after 6:00 p.m. and fire personnel gave him defendant's purse containing her identification. Paramedics then removed defendant from the vehicle and onto a gurney to take her to the hospital. At 6:28 p.m., Officer Lange conducted a Preliminary Alcohol Screening (PAS) Device test in the back of the ambulance before defendant was transported to the hospital. The results were a .397 blood-alcohol level. Officer Lange then went to the hospital. He found defendant on a gurney in the emergency room and questioned defendant with a series of standardized

2

questions as part of administering the PAS device. In response to his questions defendant stated that she had not had anything to drink, had not been driving the car, had been taking a nap and had been parked there for 10 to 15 minutes. At 7:26 p.m. a phlebotomist drew defendant's blood with a .40 percent blood-alcohol level result. A forensic alcohol analysis expert testified that a person with a blood-alcohol level of .397 or .40 percent is too impaired to operate a motor vehicle.

Defendant waived formal arraignment and pleaded not guilty, denying the special allegations. In limine, the trial court denied a motion to suppress defendant's statements to Officer Lange at the hospital. The jury found defendant guilty on all counts but left unsigned a verdict form for an enhancement allegation to Count Two that defendant's blood-alcohol level was 0.15 percent or more (§ 23578). That allegation was dismissed. The trial court found true the prior conviction allegations. Defendant was placed on probation for five years with a condition that defendant serve 365 days in Sacramento County Jail. Defendant appeals.

## DISCUSSION

Defendant contends her conviction on counts one, two, and three must be reversed because the trial court prejudicially erred (1) by admitting her statements made to law enforcement at the hospital before she was advised of her constitutional rights, (2) by failing to instruct the jury, sua sponte, on the prosecutor's misconduct during the reading of the stipulations, and (3) that if neither error on its own was sufficient to demonstrate prejudice, then the cumulative effect of the two errors requires reversal. As noted earlier, we conclude the trial court did not err.

## I

### *Motion to Suppress*

Defendant contends the trial court prejudicially erred in denying her motion to suppress the statements she made to Officer Lange while he interrogated her at the

3

hospital without advising her of her rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda*). The prosecution used defendant's obvious lie about not having consumed alcohol as evidence of her consciousness of guilt. We conclude the interrogation of defendant at the hospital was not custodial, so it was not error to admit into evidence defendant's pre-*Miranda* statements.

"An interrogation is custodial, for purposes of requiring advisements under *Miranda*, when 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' [Citation.] Custody consists of a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest. [Citations.] When there has been no formal arrest, the question is how a reasonable person in the defendant's position would have understood his situation. [Citation.]" (*People v. Moore* (2011) 51 Cal.4th 386, 394–395 (*Moore*).)

Several factors are useful in this inquiry: "(1) whether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning." (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1753.) Other factors "are [(6)] whether the suspect agreed to the interview and was informed he or she could terminate the questioning, [(7)] whether police informed the person he or she was considered a witness or suspect, [(8)] whether there were restrictions on the suspect's freedom of movement during the interview, and [(9)] whether police officers dominated and controlled the interrogation or were 'aggressive, confrontational, and/or accusatory,' whether they pressured the suspect, and [(10)] whether the suspect was arrested at the conclusion of the interview." (*People v. Pilster* (2006) 138 Cal.App.4th 1395, 1403–1404.)

" 'Whether a defendant was in custody for *Miranda* purposes is a mixed question of law and fact. [Citation.] When reviewing a trial court's determination that a defendant did not undergo custodial interrogation, an appellate court must "apply a

4

deferential substantial evidence standard" [citation] to the trial court's factual findings regarding the circumstances surrounding the interrogation, and it must independently decide whether, given those circumstances, "a reasonable person in [the] defendant's position would have felt free to end the questioning and leave" [citation].' " (*Moore, supra,* 51 Cal.4th at p. 395.)

The trial court conducted a foundational hearing to determine whether to admit the statements defendant made to Officer Lange at the hospital.

At the hearing, Officer Lange gave the following testimony: He knew defendant was already on DUI probation and gave her the PAS test on the scene in the ambulance which recorded a .397 blood-alcohol level. He then started asking her questions that were routine for a DUI investigation but was interrupted because the medical staff had to leave so defendant could receive medical attention at the hospital. Officer Lange then drove his own patrol car to the hospital, arriving around 7:00 p.m. He was the only officer at the hospital during the time of questioning. Officer Lange stated that at no time was defendant in his custody at the hospital. Further, Officer Lange never drew his weapon, nor did he handcuff defendant, or advise her of her *Miranda* rights. Once he found her in the emergency room, he proceeded to ask her routine questions that are specific to the preliminary alcohol screening test.

Officer Lange questioned defendant in the emergency room while she was on a gurney. When asked if she had had any alcohol that day, defendant responded that she had not. When asked where she had started driving, she responded that she did not drive. The questioning was not accusatory, nor threatening. In total, the questioning lasted approximately four to six minutes. Officer Lange never told defendant that she could not leave, nor did he imply that she could not terminate the conversation at any point. While defendant was restrained on the gurney, it was due to medical purposes and she was in the custody of medical personnel.

The officer's report stated he "arrested" defendant at 7:11 p.m., but he testified he never took her into custody but instead merely wrote her a citation. When asked whether he questioned defendant before or after writing her the citation, the officer said he did not specifically recall but "[i]t would have been likely before." He did recall that he asked her the questions before the phlebotomist drew her blood at 7:26 p.m.

In arguing the suppression motion, defense counsel conceded "there was no real technical arrest" but nevertheless argued the officer could not say he asked the questions before the "arrest, in quotes[.]"

The trial court found the officer "arrested" defendant at 7:11 p.m., and the court appeared to accept the officer's testimony that he "likely" asked his questions before the arrest. The trial court concluded that when Officer Lange questioned defendant at the hospital that it was not custodial because "a reasonable person in defendant's position would not believe her freedom of movement was restrained to a degree associated with formal arrest. In fact, she was being treated in the emergency room when Officer Lange arrived and asked her a set of standard questions. If there was any restraint, it was at the hands of medical personnel, not law enforcement. . . . Officer Lange's questions were standard questions and not formulated for the purpose of eliciting incriminating responses."

Applying the factors used to determine whether an interrogation is custodial for purposes of the *Miranda* advisement to the facts of the instant case, we conclude the trial court did not err in denying defendant's motion to suppress her statements to Officer Lange.

First, there was no "formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest." (*Moore, supra*, 51 Cal.4th at pp. 394–395.) She was not handcuffed or restrained by Officer Lange, but restrained on the gurney by medical staff for medical purposes. The officer never took defendant into custody but just wrote her a citation.

6

Second, the questioning lasted only four to six minutes and took place in an open emergency room where she was being treated by medical personnel.

Third, only one officer was present at the hospital and his questions were not accusatory or intimidating.

Fourth, the questions were standard investigatory questions that accompany the Preliminary Alcohol Screening test; they were, again, not accusatory nor were they, in and of themselves, intended to elicit an incriminating response.

Fifth, though defendant was not informed she could terminate the questioning, the nature of the questioning was such that a reasonable person would know they could end the questioning at any time.

Sixth, while the defendant's movement was restricted, it was due to medical treatment. She was in the "custody" of medical staff, not the police.

Based on these facts, the trial court did not err in concluding that a reasonable person in defendant's position would have felt free to end the questioning and leave [or in this case ask the officer to leave]; thus, it was not error to admit into evidence defendant's pre-*Miranda* statements to Officer Lange.

Defendant cites case law finding *Miranda* violations where the interrogating officer had probable cause to arrest the defendant before asking the questions. (*People v. Layton* (1972) 29 Cal.App.3d 349; *Commonwealth v. Whitehead* (1993) 629 A.2d 142, 427 Pa.Super. 362.) However, federal and California courts have recognized that an officer's unarticulated plan to arrest the person has no bearing on the question whether the person is in custody during the questioning, the only relevant question being how a reasonable person in the defendant's situation would have understood the situation. (*Berkemer v. McCarty* (1984) 468 U.S. 420, 442 [82 L.Ed.2d 317]; *People v. Vasquez* (1993) 14 Cal.App.4th 1158, 1163-1164.) Also unhelpful to defendant is her reliance on *People v. Bejasa* (2012) 205 Cal.App.4th 26, where the first police officer at an accident scene searched the defendant and found methamphetamine, handcuffed the defendant,

7

told him he was being detained for a possible parole violation, and placed him in the back of the police car. (*Id*. at pp. 30-31.) When additional officers arrived, police let the defendant out of the car and removed the handcuffs. An officer conducted an interview and field sobriety tests and told the defendant he was under arrest. Police did not advise the defendant of his *Miranda* rights until he was at the police station. (*Ibid*.) The appellate court found a *Miranda* violation but no prejudice. (*Id*. at pp. 35-39.) Police took the defendant into custody by handcuffing him and placing him in the back of the patrol car. (*Id*. at p. 38.) Although they released him for questioning, by then more police officers had arrived, increasing custodial pressure on the defendant by a ratio of seven officers to one suspect. (*Id*. at p. 39.) Here, there was no similar physical restraint by police or custodial pressure by police.

Even assuming for the sake of argument that the evidence should have been excluded, any error was clearly harmless beyond a reasonable doubt, because the remaining evidence overwhelmingly established defendant's guilt beyond a reasonable doubt. (*People v. Villasenor* (2015) 242 Cal.App.4th 42, 68-69.) The challenged evidence -- defendant's obvious lie to police about not having consumed alcohol -- was used by the prosecution as evidence of her consciousness of guilt. However, other undisputed evidence showed that she was alone, sitting in the driver's seat of a vehicle registered to her husband, a few blocks from her home, with the keys in the ignition, her purse on the passenger seat, and empty alcohol containers in the back seat. She was asleep or passed out around 6:00 p.m., smelled of alcohol, had a blood-alcohol level five times the legal limit, and the vehicle was parked partly on the sidewalk, consistent with having been driven there by an impaired driver.

Defendant fails to show grounds for reversal based on denial of her suppression motion.

## II

### *Prosecutorial Misconduct*

Defendant contends the prosecutor committed prejudicial misconduct while reading the stipulation to the jury, and accordingly that the trial court erred prejudicially when it failed to instruct, sua sponte, on this the prosecutor's error.

The prosecutor read the stipulations to the jury as follows:

"On April 17th, 2013, the black Dodge Durango, *being driven by the defendant*, with plate number 6 – Maybe –  (Italics added.)

"[Defense counsel]:  May we approach? I apologize."

An unreported sidebar was held at the bench.

"[Prosecutor]:  Okay.  The last stipulation, I apologize, is:  On April 17th, 2013, the black Dodge Durango that the defendant was seated in the driver's seat of, with plate number 636DP, was registered to the defendant's husband."

Citing the above-italicized language in the prosecutor's stipulation, defendant contends the prosecutor committed prejudicial misconduct by misreading the stipulations regarding the vehicle registration.  We reject this contention.

" 'The applicable federal and state standards regarding prosecutorial misconduct are well established.  " 'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct "so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." ' " [Citations.] Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves " ' "the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." ' " [Citation.] As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion -- and on the same ground -- the defendant [requested] an assignment of misconduct and [also] requested that the jury be admonished to disregard

9

the impropriety.  [Citation.]  Additionally, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'  [Citation.]"  (*People v. Ochoa* (1998) 19 Cal.4th 353, 427; see also *People v. Carter* (2005) 36 Cal.4th 1114, 1204.)

In complaining on appeal that the prosecutor stated extraneous information of no relevance, the defendant refers to the prosecution's reading of the stipulation stating that defendant was driving the car, instead of seated in the driver's seat.  Defendant argues this was akin to a prosecutor making a statement of fact not in evidence, and the trial court had a duty sua sponte to instruct the jurors that no such fact was stipulated and they must disregard the prosecutor's statement.

Judging the prosecutor's conduct by an objective standard (*People v. Hill* (1998) 17 Cal.4th 800, 822-823), we see no misconduct.  Nothing in the record supports an inference that the initial reading of the stipulation was prosecutorial misconduct, as opposed to a mere mistake by the prosecutor or a drafting error by both sides that escaped notice until it was read aloud.  This is not at all like defendant's cited authority, *People v. Kirkes* (1952) 39 Cal.2d 719, where the prosecutor told the jurors that he knew even before taking the case that the defendant was guilty and also told the jurors with no supporting evidence that a witness delayed coming forward out of fear for her life.  (*Id*. at pp. 722-726.)

Assuming misconduct, we may assume for the sake of argument that defense counsel complained about it at the unreported sidebar.  It was quickly corrected for the jury, with apology, by the prosecutor.  The record does not reveal any request by defendant for the trial court to admonish the jury.  Therefore, defendant has forfeited any claim of prosecutorial misconduct.

Defendant relies on inapposite authority for appellate review of any instruction given, refused, or modified, that affects substantial rights, despite failure to object in the

10

trial court. (Pen. Code, § 1259.) Here, there is no issue of any instruction given, refused, or modified. Defendant cites inapposite authority discussing the trial court's duty sua sponte to instruct the jury to disregard highly prejudicial, minimally relevant evidence admitted inadvertently. (*People v. Rogers* (2006) 39 Cal.4th 826, 864.) Here, defendant does not claim or demonstrate any violation of the court's duty to limit evidence and argument for the ascertainment of truth. (Pen. Code, § 1044.) There is a duty sua sponte for the trial court to recognize and correct all possible or arguable misconduct, and defendant bore the responsibility to seek admonition if she believed the prosecution overstepped its bounds. (*People v. Visciotti* (1992) 2 Cal.4th 1, 79-80.) The failure to request an admonition forfeits the contention because any harm to the defendant could have been corrected by an admonition. (*Ibid.*) We decline defendant's request that we exercise discretion to address the forfeited contention.

Finally, even assuming defendant did not forfeit the claim of prosecutorial misconduct, there is no basis for reversal because there is no likelihood the jury misapplied the original language about defendant driving the car after hearing the prosecutor apologize and make the correction that defendant was seated in the car. The trial court instructed the jury that the prosecution had the burden to prove as to each count that "defendant drove a vehicle," by intentionally exercising physical control over it and causing the vehicle to move, at least slightly. In closing argument to the jury, the prosecutor said, "Basically, what's in dispute here is whether she was driving or not. [¶] . . . [¶] I have to prove that she drove." The prosecutor did not rely on the stipulation to prove that defendant drove the vehicle but instead relied on all the circumstantial evidence that defendant drove the vehicle, including that she was sitting in the driver's seat of a vehicle registered to her husband (as stipulated) with the key in the ignition and her purse on the front passenger seat, parked partly on the sidewalk in a manner consistent with impaired status. The defense in turn asked the jury to believe, without

11

any supporting evidence, scenarios such as maybe her husband left the car there and she got into the parked car to take a nap after drinking alcohol at a nearby neighbor's house.

Defendant's claim of prosecutorial misconduct fails.

### III

### *Cumulative Error*

Defendant contends that any errors, when combined, rendered her trial fundamentally unfair.  Reversal, according to defendant, is therefore required.

" '[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error.' " (*People v. Cunningham* (2001) 25 Cal.4th 926, 1009.)  Here, there was no error and any assumed errors were harmless, and viewed cumulatively, did not significantly influence the fairness of defendant's trial.

### DISPOSITION

The judgment is affirmed.

                                            HULL           , J.

We concur:

      RAYE           , P. J.

      BUTZ           , J.