526 A.2d 784

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Donald J. FENTO.**

Superior Court of Pennsylvania.

Submitted Nov. 3, 1986.

Filed April 28, 1987.

Reargument Denied June 9, 1987.

---

William G. Martin, Jr., District Attorney, Franklin, for Com.

Oliver J. LoBaugh, Seneca, for appellee.

Before KELLY, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This is an appeal by appellant, the Commonwealth of Pennsylvania, from an order granting the appellee's, Donald J. Fento's, motion to suppress his statement to Trooper Thomas Chelgren, entered in the Venango County Court of Common Pleas. We must reverse and remand for proceedings consistent with this opinion.

A criminal complaint was issued against appellee on February 5, 1986, charging him with driving under the influence of alcohol [75 Pa.C.S.A. § 3731(a)(1) and (4)] and failing to drive a vehicle at a safe speed [75 Pa.C.S.A. § 3361]. The complaint came about as the result of appellant's involvement in a one-car accident on Route No. 62, Cranberry Township, Venango County, on January 6, 1986. Appellee was the driver and sole occupant of the vehicle. Appellee filed pre-trial motions to quash the information for failure to prove a prima facie case at the preliminary hearing, to suppress a blood alcohol reading of 0.375 taken at the hospital and to suppress the appellee's statements made at the hospital. Appellee's motion regarding the statements made at the hospital was granted, and the others were denied. This appeal followed.

The sole issue presented upon appeal is whether the appellee was "in custody" and the police officer should have given *Miranda* warnings to the appellee when he interviewed the appellee as a patient in a treatment room of the

emergency room of the hospital regarding the automobile accident in which appellee was involved.

In the instant case, the record shows that appellee initially left the scene of the one-car accident with a witness who transported the appellee to the appellee's home. Appellee was then taken by ambulance to the Oil City Hospital in order to be treated for his injuries. While investigating the accident scene, Trooper Thomas Chelgren of the Pennsylvania State Police observed the ambulance transporting the appellee to the hospital. After remaining at the accident scene for approximately thirty (30) minutes, Trooper Chelgren went to the hospital in order to interview the appellee.

Trooper Chelgren testified that, upon arrival at the hospital, he received permission from hospital personnel to question the appellee. Upon entering the treatment room in the hospital emergency room area where the appellee was located, Trooper Chelgren found the appellee confined to a bed for observation and treatment. Before questioning appellee, Trooper Chelgren stood in the room and observed as a nurse or technician drew blood from his arm. Immediately following the administration of the blood test, Trooper Chelgren questioned appellee for about five (5) minutes. In response to Trooper Chelgren's questions, appellee stated that he was operating the vehicle in question, that he was traveling at a certain speed, that he had consumed "a couple of beers" prior to the accident and that he had not consumed any alcohol subsequent to the accident. In addition, Trooper Chelgren detected an odor of alcohol on appellee's breath and noticed that appellee's eyes were bloodshot and his speech was slurred. Trooper Chelgren testified that he felt appellee was incapable of making a knowing consent to a blood test ordered by hospital personnel. Trooper Chelgren also testified that, during questioning, appellee did not appear alert. At no time during the interview did Trooper Chelgren give the appellee his *Miranda* warnings. Appellee was not arrested at the end of the interview.

Trooper Chelgren testified that his decision to file charges was not made until the following day when he observed the results of appellee's blood test which had been ordered the previous day by hospital personnel. At that time, Trooper Chelgren returned to the hospital and informed appellee that he received the results of his blood test and that, since appellee's blood alcohol level was over the limit, he would be filing charges of driving under the influence of alcohol against appellee.

Appellant, the Commonwealth, argues that appellee was not "in custody" when questioned by Trooper Chelgren in the emergency room area of the hospital and, therefore, *Miranda* warnings were not required. Rather, the Commonwealth contends that Trooper Chelgren interviewed the appellee as a part of his basic accident investigation and no arrest was made at that point. We agree.

In *Commonwealth v. Chacko,* 500 Pa. 571, 577, 459 A.2d 311, 314 (1983), the Pennsylvania Supreme Court followed the mandate of the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966) and ruled:

> The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. (citations omitted).

*Miranda* warnings are necessary only on those occasions when a suspect is undergoing actual "custodial interrogation." The fact that a defendant was the focus of the investigation is a relevant factor in determining whether he was "in custody." However, the fact that a police investigation has focused on a particular person no longer automatically requires *Miranda* warnings. *Commonwealth v. Holcomb,* 508 Pa. 425, 440, 498 A.2d 833, 840 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1804, 90 L.Ed.2d 349 (1986); *Beckwith v. United States,* 425 U.S. 341, 347–

48, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1976). In addition, a suspect may be "in custody" even in instances where the police have not taken him to a police station or formally arrested him. *Commonwealth v. Fisher,* 466 Pa. 216, 220, 352 A.2d 26, 28 (1976).

*Miranda* warnings were designed to shield an accused from the coercive aspects of custodial interrogations, i.e., from incommunicato interrogation in a police-dominated atmosphere, which resulted in self-incriminating statements without full warnings on constitutional rights. *Commonwealth v. Ziegler,* 503 Pa. 555, 561, 470 A.2d 56, 58 (1983); *Miranda v. Arizona,* supra, 384 U.S. at 445–46, 86 S.Ct. at 1612–13, 16 L.Ed.2d at 707. After a careful study of the record, we find these elements were not present in the instant case.

The record shows no evidence to indicate that appellee was "in custody" during his interview with Trooper Chelgren. We find no evidence to suggest that Trooper Chelgren deprived appellee of his freedom in any significant way or placed appellee in a situation in which he could reasonably believe that his freedom of action or movement was restricted by such interrogation. *Commonwealth v. Chacko,* supra; *Miranda v. Arizona,* supra.

Trooper Chelgren went to the hospital in order to interview the appellee as a part of a routine accident investigation. He had not interviewed appellee at the scene of the accident since appellee left before Trooper Chelgren arrived. Thus, Trooper Chelgren's interview with the appellee was necessary in order to complete his report. In fact, according to Trooper Chelgren, it was only after he observed appellee and after his conversation with appellee began that he detected evidence of a possible driving under the influence of alcohol charge. Trooper Chelgren was not provided with this information at the accident scene.

Appellee was not restricted by Trooper Chelgren from contact with other people for any period of time. Before questioning the appellee, Trooper Chelgren requested and received permission from hospital personnel. Trooper Chel-

gren gave no orders that he and appellee were not to be disturbed during their conversation. Hospital personnel treated appellee before and after his interview with no interference from police.

Trooper Chelgren was the only police officer involved in the investigation of the accident and interrogation of appellee. Appellee was in no way guarded by police during his interrogation in the emergency room or during his three-day stay at the hospital.

Moreover, the interview itself was not long and drawn-out. It lasted for approximately five (5) minutes. In addition, during the interview, Trooper Chelgren did not inform appellee that he was not free to leave or place appellee in any sort of restraints. Appellee was not arrested before, during or at the end of the interview. Trooper Chelgren testified that his decision to file charges against the appellee was not made until the following day when he observed the results of appellee's blood test. He then returned to the hospital in order to inform appellee of his decision.

Thus, the only restraints placed on appellee were created by his own medical condition as the result of the accident rather than any coercive action on the part of Trooper Chelgren. Any restraint applied in this case was for medical purposes by medical personnel rather than investigative purposes by police officers. It would be reasonable in this case for appellee to expect his detention to last only for the time that is medically necessary and to feel free to leave after that, if not before, in the event that he refused to consent to medical treatment. In addition, Trooper Chelgren never ordered the hospital personnel to detain appellee.

Granted, appellee became the focus of the investigation when Trooper Chelgren, while in the emergency room treatment area, detected an odor of alcohol on appellee's breath, noticed that appellee's eyes were bloodshot and his speech was slurred and ascertained, through the questioning of appellee, that appellee was the driver of the vehicle in question. As stated before, the fact that a police investiga-

tion has focused on a particular person no longer automatically requires *Miranda* warnings. On the other hand, the fact that appellee was the focus of the investigation is a relevant factor in determining whether he was "in custody." However, in the instant case, we find no other evidence to support the proposition that the appellee was undergoing actual "custodial interrogation." *Commonwealth v. Holcomb*, supra; *Beckwith v. United States.*

Pennsylvania has no case law directly on point with the factual situation in the instant case.

In *Commonwealth v. Fisher*, 466 Pa. 216, 352 A.2d 26 (1976), incriminating statements were also made in a hospital setting. However, unlike the instant case, *Fisher* presents a custodial situation under *Miranda*. In *Fisher*, the Court found that it was dealing with a type of interrogation environment created by the police in which they could take advantage of the situation in order to compel the defendant to incriminate himself. In *Fisher*, the defendant was placed under guard for approximately forty-eight (48) hours before he incriminated himself during his third session of police questioning. Under such conditions, the Court found that the defendant would reasonably believe that his freedom of action or movement was restricted by such interrogation.

Unlike *Fisher*, in the instant case, there were no police guards or restraints of any sort imposed by the police. In addition, the questioning by Trooper Chelgren only lasted approximately five (5) minutes and was not subsequently repeated.

In *Commonwealth v. D'Nicuola*, 448 Pa. 54, 292 A.2d 333 (1972), the Court held that while hospitalized, the defendant had become the focus of the investigation and thus should be given the *Miranda* warnings. In *D'Nicuola*, the police arrived at the defendant's hospital room with a recently fired revolver which had been taken from the defendant's vehicle and with the knowledge that the defendant's friend was missing. Instead of questioning the defendant concerning his attempted suicide, the police questioned the

defendant about the revolver which had no connection to his suicide attempt.

The "focus of the investigation" test comes from *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). In *D'Nicuola*, the Court based its findings on *Commonwealth v. Feldman*, 432 Pa. 428, 432, 248 A.2d 1, 3 (1968), which interpreted a defendant's rights under both *Miranda* and *Escobedo:*

> From reading *Escobedo* and *Miranda* together it becomes clear that whenever an individual is questioned while in custody *or* while the object of an investigation of which he is the focus, before *any* questioning begins the individual must be given the warnings established in *Miranda.*

However, the "focus of the investigation" analysis has since been rejected. In *Commonwealth v. Holcomb*, supra, 508 Pa. at 440, 498 A.2d at 840, *cert. denied,* —— U.S. ——, 106 S.Ct. 1804, 90 L.Ed.2d 349, following the United States Supreme Court holding in *Beckwith v. United States*, supra, 425 U.S. at 347–48, 96 S.Ct. at 1616–17, 48 L.Ed.2d at 8, the Pennsylvania Supreme Court ruled that:

> *Miranda* warnings are necessary only when a suspect is undergoing actual custodial interrogation, with the issue of the focus of the investigation only a relevant factor in determining custody.

Thus, in the case at bar, we find that the lower court incorrectly followed the rejected "focus of the investigation" analysis as presented in *D'Nicuola.*

In *Commonwealth v. Silo*, 480 Pa. 15, 22, 389 A.2d 62, 65 (1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1053, 59 L.Ed.2d 94, our Supreme Court held that the mere arrival and presence of police officers in the hospital ward in which the defendant was undergoing examination and treatment did not constitute arrest where the police did not communicate to the defendant any intention of taking him into custody and did not give *Miranda* warnings until almost an hour after they had seized his clothing. The situation in *Silo* differs from the instant case in that, once the police officers

were permitted by hospital personnel to interview the defendant, the police officers communicated their intention of taking the defendant into custody, and *Miranda* warnings were given.

A review of cases from other jurisdictions provides a variety of results from different factual situations. However, our conclusion that the facts in the instant case do not constitute actual "custodial interrogation" is supported by numerous jurisdictions which have already been confronted with similar questions. *State v. Clappes,* 117 Wis.2d 277, 344 N.W.2d 141 (1984); *State v. Fields,* (1980, N.D.), 294 N.W.2d 404; *State v. Brunner,* 211 Kan. 596, 507 P.2d 233 (1973).

In *State v. Clappes,* supra, the defendant had been involved in a one-car accident and taken to a hospital. Police officers asked consent of the doctors to question the defendant, and there were up to seven (7) medical persons present at the time of questioning. There was no evidence of trickery or pressure by the police applied to the defendant. During the questioning, the defendant gave detailed information about the accident, including the fact that he had been the driver of the vehicle. The Supreme Court of Wisconsin held that the circumstances of the case did not involve "custodial interrogation" of the defendant and, therefore, did not require *Miranda* warnings before police officers questioned the defendant.

In *State v. Fields,* supra, the defendant was in the hospital following an automobile accident. Upon locating the defendant in the hospital, the police officer in charge of the investigation asked him if he was the driver of the car. After receiving an affirmative response, the officer asked the defendant if he would submit to a blood-alcohol test. The defendant agreed and was placed under arrest for driving under the influence of intoxicating liquor. The defendant was then informed of some of his *Miranda* rights. However, prior to the defendant's arrest, there was no evidence that the defendant was deprived of his freedom by authorities in any significant way. Therefore, the Su-

preme Court of North Dakota held that the defendant was not in custody during the initial questioning by the first police officer on the scene since his detention resulted from medical advice and not from any action on the part of the authorities.

In *State v. Brunner,* supra, the defendant was taken to the hospital following a one-car accident. When questioned at the hospital by a police officer, the defendant admitted that he was the driver of the vehicle and that he had been drinking. The officer testified that the defendant appeared very irrational and confused at the time but that he appeared to understand what he was doing when he signed a blood consent form. The questioning lasted approximately fifteen (15) minutes. The Supreme Court of Kansas ruled that, although the defendant was suspected of being the driver of the car and of having driven it while under the influence of intoxicating liquor, the defendant was not "in custody" when questioned. His detention resulted from his medical condition and not from any action on the part of the police.

Thus, in the instant case, we too find that the police officer's investigation of appellee's automobile accident, including the questioning of appellee who was apparently intoxicated, injured and awaiting treatment in a hospital emergency room, involved nothing more than proper police procedure.

Appellee was not questioned in an isolated, coercive atmosphere created by the police. The circumstances were public with a number of hospital personnel around the area. The questions asked by Trooper Chelgren related to police investigation of a one-car accident in which appellee was the driver. The questioning was brief, lasting approximately five (5) minutes, and no apparent police trickery or deception was used. Appellee was not placed under arrest before, during or after the initial questioning. Moreover, we conclude that the appellee's detention while in the emergency room area of the hospital was purely the result of his

medical condition at that point as opposed to any action on the part of the police.

Therefore, we find that appellee was not physically deprived of his freedom in any significant way during the questioning by Trooper Chelgren and was not placed in a situation in which he could reasonably believe that his freedom of action or movement was restricted by such interrogation. Thus, since appellee was not "in custody," the absence of *Miranda* warnings did not of itself render the appellee's statements inadmissible. *Commonwealth v. Chacko*, supra; *Commonwealth v. Holcomb*, supra.

Order vacated and record remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.