**Commonwealth v. Miller**

Joseph George Jr., for Commonwealth.
Daniel Webster, for defendant.

SOLOMON, *J.,* June 29, 2005—

## BACKGROUND

The defendant was charged with several violations of the Pennsylvania Vehicle Code, including driving after imbibing, 75 Pa.C.S. §3802(c). The defendant then filed an omnibus pretrial motion, and a hearing was held.

## DISCUSSION

The defendant filed an omnibus pretrial motion claiming relief on three grounds: that 75 Pa.C.S. §3802(c) is unconstitutional; that the oral statements of the defendant should be suppressed; and that the Commonwealth failed to make out a prima facie case. We will discuss these claims in order as raised.

The defendant first argues that the statute under which she is charged, 75 Pa.C.S. §3802(c), is unconstitutional. We note initially that the defendant has not followed the procedure set out in *Commonwealth v. Edmunds,* 526

Pa. 374, 586 A.2d 887 (1991), which dictates the necessary factors to be addressed when asking the courts to undertake a constitutional analysis. Under *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), state courts are required to make a "plain statement" of the independent state grounds upon which the court relies in its decision. In order to comply with this requirement, the Pennsylvania Supreme Court has determined that litigants must brief and analyze "[the] text of the Pennsylvania constitutional provision; [the] history of the provision, including Pennsylvania case law; . . . related case law from other states; [and any] policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence." *Edmunds* at 390, 586 A.2d at 895. However, failure to follow *Edmunds* is not fatal, *Commonwealth v. Swinehart,* 541 Pa. 500, 664 A.2d 957 (1995), so we will address the defendant's constitutionality issue.

The defendant argues that the statute under which she is charged is unconstitutional because it is vague and overbroad, has no rational relationship to a state interest, and imposes absolute liability without an affirmative defense or a rebuttable presumption. She bases this argument on both the Pennsylvania and United States constitutions. We begin our analysis by noting that statutes are strongly presumed to be constitutional and the person challenging that constitutionality has a heavy burden of persuasion. *Commonwealth v. Mayfield,* 574 Pa. 460, 832 A.2d 418 (2003); *Commonwealth v. Craven,* 572 Pa. 431, 817 A.2d 451 (2003); *Commonwealth v. Packer,* 568 Pa. 481, 798 A.2d 192 (2002). Legislation

will only be declared unconstitutional if it "clearly, palpably and plainly" violates the constitution. *Id.* at 494, 798 A.2d at 200.

The statute at issue is section 3802(c) of the Motor Vehicle Act, and provides:

"The highest rate of alcohol.—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood and/or breath is 0.16 percent or higher within two hours after the individual has driven, operated, or been in actual physical control of the movement of the vehicle." 75 Pa.C.S. §3802(c).

There is no question that laws prohibiting drunk driving are reflective of a legitimate, even compelling, state interest. It has long been recognized that states have a legitimate interest in maintaining safety on their highways. See *e.g., Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) ("We have traditionally accorded the states great leeway in adopting summary procedures to protect health and safety. States surely have at least as much interest in removing drunken drivers from their highways as in summarily seizing mislabeled drugs or destroying spoiled food stuffs."). The statistics regarding alcohol-related casualties and fatalities on the state's highways are readily available and widely publicized, so we will not belabor the issue. See *e.g.,* http://www.nhtsa.dot.gov/people/injury/alcohol/StopImpaired/809/index.htm.

Given the risks that drunk drivers pose to other drivers, pedestrians, and themselves, we find that legislation

to prohibit and punish drunk driving is a legitimate goal and that laws aimed at realizing that goal are rationally and reasonably related to the achievement of that goal.

Under federal law, and the law in Pennsylvania, the void for vagueness doctrine requires that a criminal statute define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited, and in a manner that does not encourage arbitrary and discriminatory enforcement. *Commonwealth v. Mikulan,* 504 Pa. 244, 470 A.2d 1339 (1983) (citing *Kolender v. Lawson,* 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). A statute is void for vagueness if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Commonwealth v. Burt,* 490 Pa. 173, 177-78, 415 A.2d 89, 91 (1980) (citing *Colautti v. Franklin,* 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979)). Due process requirements are satisfied if the statute provides reasonable standards by which a person may gauge his future conduct. *Commonwealth v. Heinbaugh,* 467 Pa. 1, 354 A.2d 244 (1976) (citing *United States v. Powell,* 423 U.S. 87, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975)).

A statute is overbroad if it punishes constitutionally protected activity as well as the illegal activity at which it is directed. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Commonwealth v. Stenhach,* 356 Pa. Super. 5, 514 A.2d 114 (1986). The language of the statute must literally encompass protected, lawful conduct. *Id.* "[A] governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area

of protected freedoms." *Adler v. Montefiore Hospital Association of Western Pennsylvania,* 453 Pa. 60, 72, 311 A.2d 634, 640 (1973) (citing *NAACP v. Alabama,* 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1969)).

The defendant argues that section 3802(c) is unconstitutional for the same reasons that the Supreme Court of Pennsylvania found former section 3731 to be unconstitutional. In *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162 (1996), the Supreme Court struck down former section 3731 because it was impermissibly vague and because it failed to provide a method of rebutting the presumption of driving while over the legal limit.[1] The defendant's argument, however, is misplaced.

The *Barud* court found former section 3731 void for vagueness because it provided *two* instances in which one could violate the law—by driving while having an actual blood alcohol content of 0.10 percent at the time of driving, or by driving with a BAC somewhere below 0.10 percent at the time of driving but which rises above 0.10 percent within three hours of driving. The court found that the statute did not provide "a reasonable standard by which an ordinary person may contemplate their future conduct. As the learned trial court below pointed out, 'How is a citizen to know when their lawful action . . . ripens into criminal conduct? How can one predict when and whether a 0.10 percent alcohol level will be reached within three hours of driving?' " *Id.* at 306, 681 A.2d at 166. (citation omitted)

Section 3802(c), on the other hand, only creates one offense—driving after consuming enough alcohol to raise

---

1. We will discuss this second point, *infra.*

one's BAC to 0.16 percent (twice the legal limit) within two hours of driving. The defendant argues that it is impossible for one to determine when one's BAC will rise to a certain level and, therefore, the statute is too vague. While we appreciate that it may not be within any person's ability to determine with specificity what their BAC may be at any given moment, the vagueness doctrine is not designed "to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. . . ." *Commonwealth v. DeFrancesco*, 481 Pa. 595, 608, 393 A.2d 321, 327 (1978) (citing *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)). "[S]tatutes alleged to be vague are not 'to be tested against paradigms of draftsmanship. Rather, the requirements of due process are satisfied if the statute in question contains reasonable standards to guide the prospective conduct.' " *Commonwealth v. Mikulan, supra* at 252, 470 A.2d at 1343 (citing *Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244 (1976)).

The defendant's argument is, essentially, that a person of ordinary intelligence cannot pinpoint with mathematical accuracy when, in the course of performing the lawful act of consuming alcohol, she crosses the threshold from "safe" to "too intoxicated to drive." This argument oversteps the nature of due process. Due process, and the vagueness doctrine in particular, are not required to provide mathematical precision; they are simply required to provide a "rough idea of fairness." *Commonwealth v. DeFrancesco, supra* (citing *Colten v. Kentucky*, 407 U.S.

104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)). Furthermore, there is no constitutional, statutory, or common-law right to the consumption of *any* alcohol at *any* time, and "there is little doubt that the legislature could, if it so chooses, prohibit driving within a certain reasonable time after drinking *any* amount of alcohol . . . ." *Commonwealth v. Mikulan, supra* at 254, 470 A.2d at 1344 (emphasis in original) (citing *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972)). "While a person's ability to consume substantial quantities of alcohol prior to driving and remain within the bounds of the law may indeed have been 'chilled' . . . this 'chilling effect' on the person's 'right' to drink to the cutting edge of sobriety is exactly what our legislature intended, is well within the police powers of the Commonwealth and is *not* proscribed by the due process clause." *Commonwealth v. Mikulan, supra.*[2] (emphasis in original) Additionally, as there is no right to the consumption of alcohol, the defendant's argument that the statute is overbroad because it encompasses protected rights fails as well.

As her last constitutional argument, the defendant maintains that the statute imposes an irrebuttable presumption and, therefore, is unconstitutional as violative of due process. This argument also fails. It is the contention of the defendant that, in order to be constitutional, the statute must provide a rebuttable presumption or an affirmative defense "which would require the Commonwealth to prove that the accused's blood alcohol content

---

2. We note that there is no argument that section 3802 encourages arbitrary and discriminatory application. Either a person is over, or is not over, the specified limit within the specified time.

was at least 0.16 percent at the time of driving." The defendant's argument might have merit if the statute in question actually addressed a person's BAC at the time of driving. Section 3802(c), however, does *not* address BAC at the time of driving; it addresses BAC "within two hours after a person has driven, operated or been in actual physical control of the movement of the vehicle." 75 Pa.C.S. §3802(c). The statute does not suggest that a BAC level obtained within two hours of driving is presumed to be a person's BAC level while he or she was driving. Nor does the statute suggest that a defendant is precluded from entering evidence challenging the BAC level. The defendant is free to question the accuracy of the test or the testing device, attack the chain of custody of a blood sample, enter evidence of imbibing alcohol between the time of driving and the time of the test, or dispute the test results on any other relevant grounds. Given all of the above analyses, we find that section 3802(c) does not violate either the constitution of Pennsylvania or the United States Constitution.

The defendant next argues that she made incriminating statements to the investigating police officer while she was in custody because the officer did not advise her of her *Miranda* rights and that those statements should, therefore, be suppressed. This argument, however, mischaracterizes the scope of *Miranda* as it pertains to police questioning. *Miranda* is meant to protect an individual from undue coercion or intimidation during custodial police interrogation. The test for custodial interrogation is "whether the suspect is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his free-

dom . . . is restricted by such interrogation . . . ." *Commonwealth v. Brown,* 473 Pa. 562, 570, 375 A.2d 1260, 1264 (1977). (citations omitted)

At the OPT hearing, both Trooper Morrison and the defendant testified regarding their interaction. Trooper Morrison's testimony was confident, did not contradict itself, and was supported by his written police report and by other testimony. The defendant's testimony was uncertain, contradicted itself, and, we believe, her memory was undermined by her level of intoxication at the time of the incident.[3] Therefore, we find the trooper's testimony to be more credible.

From the credible testimony, it appears that the defendant and a Mr. Burlock attended a party on the afternoon of the day in question. After spending some time at the party, the two had a dispute and they left the party in Burlock's truck. The argument continued in the vehicle and, at some point, Burlock exited the truck. The defendant took the wheel and continued toward her home; Burlock sat in the woods for some time "to clear his head" and then began walking home. As the defendant made her way home, she lost control of the truck, and it ended up on its side in the wrong lane. The defendant left the scene of the accident with an acquaintance from the party who was in the vehicle behind her.

At approximately 6:30 p.m., Trooper Morrison was dispatched to the scene where, upon his arrival, he found emergency workers, but no driver or occupants of the truck. An emergency worker informed him that the driver

---

3. The defendant's blood alcohol level almost an hour later was 0.19 percent.

of the truck had left the scene in a private vehicle to obtain medical treatment. Burlock then arrived at the scene, claiming that he was the owner of the truck and demanding to know the whereabouts of the driver. As part of the investigation, the trooper asked Burlock the name of the person who was driving and where the operator might be located. Burlock responded by taking the trooper first to his home, which he shared with the defendant, and then, upon discovering the defendant was not there, to the home of the defendant's daughter. Upon reaching the daughter's home, at approximately 7 p.m., Burlock knocked on the door and then entered without anyone inside the house issuing an invitation. The trooper followed him through the door.

Upon entering the home, Burlock pointed out the defendant, who was seated on a couch with her daughter, to the trooper. At least four other people were in the home, including the defendant's ex-husband and one of his brothers. The trooper observed that the defendant was upset, crying, had slurred speech, glassy, bloodshot eyes, smelled of alcohol, and had a red abrasion across her chest suggesting she had been injured. Based on the information he had obtained from his investigation to that point, the trooper asked the defendant why she left the scene of the accident, and she replied that she was afraid. When he asked her why she was afraid, she answered because of previous DUIs. The trooper then asked if she was driving the vehicle, and she answered in the affirmative. She also admitted that she had been drinking. The trooper then took the defendant and Burlock from the home to a parking lot where he conducted field sobriety tests on the defendant. After she failed those tests, the

trooper placed the defendant under arrest for suspicion of driving under the influence and transported her to a hospital for a blood test. Her blood was drawn at approximately 7:45 p.m.; thereafter, the defendant was taken to the police barracks for booking and was given her *Miranda* warnings at approximately 8:30 p.m.

There is no question that, once the trooper removed the defendant from her daughter's home, she was "in custody" since she was under the exclusive control of the trooper and had a reasonable expectation that she would not be permitted to leave that control. Thus, any incriminating information given in response to interrogation between that time and the time she was read her *Miranda* rights would be inadmissible. The defendant, however, under the facts in this case, was not in custody while she was in the home. Hence, *Miranda* does not apply.

In making the determination of when the defendant was in custody, we find *Commonwealth v. Fento,* 363 Pa. Super. 488, 526 A.2d 784 (1987), instructive. In *Fento,* Donald Fento was involved in a one-car accident in which he was the driver. While he was awaiting treatment in a local hospital, the investigating officer interviewed him for about five minutes in the presence of hospital personnel and without reading Fento his *Miranda* rights. Fento told the officer that he was driving the vehicle, that he had been traveling at a certain speed, that he had consumed "a couple of beers" before the accident, and that he had not consumed any alcohol since the accident. *Id.* at 491, 526 A.2d at 786. The officer did not arrest Fento at that time but instead waited for the results of the blood test before charging him the

following day. On appeal, Fento argued that his statements during the brief interview at the hospital should have been suppressed because he was "in custody" at the time and therefore the officer violated his *Miranda* rights. The Commonwealth argued that the officer interviewed Fento as part of the basic accident investigation and that Fento was not in custody during the interview. The Superior Court agreed with the Commonwealth and stated that

"The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. . . . [*Commonwealth v. Chacko,* 500 Pa. 571, 577, 459 A.2d 311, 314 (1983) (citing *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)).]

"*Miranda* warnings are necessary only on those occasions when a suspect is undergoing actual 'custodial interrogation.' The fact that a defendant was the focus of the investigation is a relevant factor in determining whether he was 'in custody.' However, the fact that a police investigation has focused on a particular person no longer automatically requires *Miranda* warnings. *Commonwealth v. Holcomb,* 508 Pa. 425, 440, 498 A.2d 833, 840 (1985) . . . ; *Beckwith v. United States,* 425 U.S. 341, 347-48, 96 S.Ct. 1612, 1616-17, 48 L.Ed.2d 1 (1976)." *Commonwealth v. Fento,* 363 Pa. Super. 488, 492-93, 526 A.2d 784, 786 (1987).

Based upon the test as outlined above, the *Fento* court found no evidence to suggest that Fento was "in custody" during the officer's interview at the hospital. Nor did they find that the officer "deprived [Fento] of his freedom in any significant way or placed [him] in a situation in which he could reasonably believe that his freedom of action or movement was restricted by such interrogation." *Id.* at 493, 526 A.2d at 787 (citing *Commonwealth v. Chacko, supra; Miranda v. Arizona, supra*). The court found that the officer had interviewed Fento at the hospital as part of a routine accident investigation since he had been unable to interview Fento at the scene of the accident and that it was necessary to interview Fento, as the driver, in order to complete the accident investigation. It was only after the interview that the officer suspected Fento of driving under the influence since the officer had been provided with no evidence to that effect at the scene of the accident. Further, Fento was not restricted by the officer from contact with other people during the interview. The investigating officer was the only officer involved in the interview and Fento was in no way guarded during the interview. The interview itself lasted about five minutes and at no time during the interview did the officer tell Fento that he was not free to leave or place Fento in any sort of restraints. Based on these findings, the court held that the investigating officer's interview of Fento "involved nothing more than proper police procedure." *Id.* at 498, 526 A.2d at 789.

"[Fento] was not questioned in an isolated, coercive atmosphere created by the police. The circumstances were public with a number of hospital personnel around the area. The questions asked by [the investigating officer]

related to police investigation of a one-car accident in which [Fento] was the driver. The questioning was brief, lasting approximately five minutes, and no apparent police trickery or deception was used. . . .

"Therefore, we find that [Fento] was not physically deprived of his freedom in any significant way during the questioning by [the investigating officer] and was not placed in a situation in which he could reasonably believe that his freedom of action or movement was restricted by such interrogation. Thus, since [Fento] was not 'in custody,' the absence of *Miranda* warnings did not of itself render [Fento]'s statements inadmissible." *Id.* at 498-99, 526 A.2d at 789-90. (citations omitted) See also, *Commonwealth v. Smith,* 382 Pa. Super. 288, 555 A.2d 185 (1989) (holding the same under similar facts).

Based on the Superior Court's ruling in *Fento,* and its reasoning, we similarly find that there was no violation of the defendant's *Miranda* rights because the defendant was not in custody at the time of the interview at issue. When the trooper was taken to the home of the defendant's daughter, his accident investigation was still ongoing. Based on a statement from the owner of the truck, he was attempting to ascertain who had been driving and what had occurred. The trooper asked four questions and only then, based on the defendant's answers and the defendant's appearance, did he ask her to accompany him for field sobriety tests. There was no testimony that the trooper had any indication that the defendant had been drinking before he encountered her in her daughter's home. The defendant was seated in the home, which is where she chose to go after the accident, with

her daughter, and there were other individuals in the home. The trooper did not prevent her from having contact with those other individuals while he asked his four questions, nor did he inform her that she was not free to leave. Trooper Morrison was the only officer involved in the interview and he in no way restrained the defendant during the brief interview. Only after he ascertained that she was the driver and had reasonable suspicion that she had been intoxicated while driving did he restrict her freedom of movement. Under these circumstances, we cannot find that the defendant reasonably believed that her "freedom of action or movement" was restricted during the interview and, therefore, she was not "in custody." Since she was not in custody, *Miranda* is inapplicable, and the defendant's argument that her statements during the interview should be suppressed fails.

The defendant's last argument is a habeas claim, maintaining that the Commonwealth failed to make out a prima facie case, and asks that we conduct an independent review of the preliminary hearing testimony. However, the defendant failed to make the transcript of the preliminary hearing a part of the record at the time of the hearing. Thus, this issue is waived.

Wherefore, we enter the following order.

## ORDER

And now, June 29, 2005, after hearing, it is hereby ordered and decreed that the omnibus pretrial motion for relief filed by the defendant is denied.