**In Re B.R.**

564

*Jeffrey Dimmig,* deputy district attorney, for Commonwealth.

*Andrea Olsovsky,* assistant public defender, for defendant.

STEINBERG, *J.,* July 28, 2011—The juvenile, Brian Roberson, is charged with possession with intent to deliver a controlled substance,[1] namely marijuana, and possession of a small amount of marijuana.[2] On April 25, 2011, a motion to suppress was filed on behalf of the juvenile alleging that all physical evidence and statements made by the juvenile should be suppressed because they

---

1. 35 P.S. § 780-113(a)(30).
2. 35 P.S. § 780-113(a)(31).

were given without Miranda warnings when he was in custody and being interrogated for law enforcement purposes.

At a hearing on the motion held on June 29, 2011, Officer Matthew Diehl, Detective Robert Holler and Officer Christie Correa of the Allentown Police Department testified with respect to the above-captioned matter. The Commonwealth also introduced the "consent to search" form[3] as well as the lab test results.[4] On July 27, 2011, an adjudication hearing was held at which point this court deferred adjudication pending the resolution of this motion.

After consideration of the evidence and the brief submitted by counsel for the defendant, the motion to suppress is granted.

## FINDINGS OF FACT

1. Brian Roberson, a juvenile, is the subject of these proceedings. He was born on July 9, 1994 and at the time of this incident was 16 years of age.

2. On February 26, 2011, at approximately 8:00 p.m., Officers of the Allentown Police Department responded to a report of an assault on one male by a group of individuals. The description of the individuals was four (4) black males, one (1) of which was wearing a red jacket, travelling with two (2) females.

3. Officer Diehl received information from Sergeant

---

3. Commonwealth Exhibit 1.
4. Commonwealth Exhibit 2.

Edward Fitzsimmons that less than one (1) block away from the assault, a male with a red jacket and a female were inside the 7-Eleven convenience store at 7th and Linden Street, Allentown. Officer Diehl responded and saw the juvenile, wearing a red jacket, inside the store.

4. Officer Diehl and the juvenile had a brief conversation during which Officer Diehl explained that he was investigating an assault and that the juvenile matched the description of the individual involved. The juvenile identified his name and basic information.

5. Officer Diehl smelled a strong odor of marijuana and asked the juvenile if he had been smoking. The juvenile admitted to smoking marijuana.

6. Officer Diehl asked if the juvenile possessed marijuana on his person and the juvenile did not answer. Officer Diehl told the juvenile that he can "make an inference you do have something on you by the way you are not answering me." Officer Diehl also told the juvenile that if he was carrying a small amount of marijuana, such as a "dime bag," that he would not be in trouble. The juvenile then admitted that he had a small amount of marijuana in his pocket.

7. Officer Diehl retrieved a zip-lock bag containing eleven (11) smaller bags of marijuana from the juvenile's pocket. The marijuana later tested positive in the amount of 7.3 grams.

8. After the marijuana was seized, the juvenile was put in handcuffs and placed in custody.

9. Witnesses from the assault incident were brought to the area of the 7-Eleven, but were unable to make an identification.

10. The juvenile was transported to headquarters and the juvenile's cell phone, which was ringing and receiving several messages, was taken into custody.

11. At headquarters, the juvenile's cell phone was unlocked in order to allow Officer Diehl to contact Ms. Melba Sutton, the juvenile's mother.

12. At headquarters, Officer Diehl explained to the juvenile that the bags of marijuana found with nothing to use to ingest the marijuana, indicated that he was involved with the dealing or selling of narcotics. The juvenile denied involvement.

13. Officer Diehl requested to examine the juvenile's phone, explaining "your phone's going off nonstop and that with your consent I would like to look through it and if there is nothing in there about selling weed then that would help you." After the juvenile consented to an examination of his cell phone, Officer Diehl discovered a message stating "I just want a nick."

14. Upon Ms. Sutton's arrival, the juvenile and his mother signed a "Consent to Search" form relating to the juvenile's cell phone.

15. Detective Holler discovered several messages on the juvenile's cell phone from February 26, 2011 regarding the delivery of marijuana between the juvenile and another contact.

16. Detective Christie Correa rendered an expert opinion that based on the amount of marijuana, the packaging of the bags and the messages from the juvenile's cell phone, the marijuana was possessed with the intent to deliver. Detective Correa further testified that even without the messages, in her opinion, the marijuana was possessed for delivery versus personal use. Her opinion was that the juvenile was both a user and a dealer.

## DISCUSSION AND CONCLUSIONS OF LAW

A. *The interaction between Officer Diehl and the juvenile began as an investigative detention, but rose to the level of a custodial detention*

There are three (3) levels of interactions between police and citizens. The first level of interaction is a "mere encounter," or a request for information. *Commonwealth v. Daniels*, 999 A.2d 590, 596 (Pa. Super. 2010). A mere encounter does not need to be supported by any level of suspicion and carries no compulsion on behalf of the citizen to stop or respond. The second level of interaction is an "investigation detention." *Id.* This level of interaction subjects a suspect to stop and a period of detention, and must be supported by reasonable suspicion, based on specific and articulable facts, that criminal activity is afoot. *Id.* See also *Commonwealth v. Cauley*, 10 A.3d 321 (Pa. Super. 2010); *Commonwealth v. Blair,* 860 A.2d 567 (Pa. Super. 2004). The inquiry is an objective one, namely whether the facts available to the officer warrant a man of reasonable caution and belief that the action taken was appropriate. *Blair*, 860 A.2d at 573 citing *Terry v. Ohio,*

392 U.S. 1, 21-22 (1968). An investigative detention does not involve such coercive conditions as to constitute the functional equivalent of an arrest. *Id.* The final level of interaction is an arrest, or "custodial detention," and must be supported by probable cause. *Id.* When a defendant is subject to a custodial detention and questioning, Miranda warnings are required.

An investigative detention occurs when an officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes. *Commonwealth v. Hayes*, 898 A.2d 1089, 1092 (Pa. Super. 2006). First, Officer Diehl received information that a juvenile, matching the description of an individual who was involved in an assault, was at a location less than a block away from the incident. When Officer Diehl arrived at the location and made eye contact with the juvenile, the juvenile immediately put his head down and continued to linger in the store for minutes without making a purchase. Officer Diehl reasonably could have suspected that the juvenile in the store had committed a crime, justifying a brief detention in order to investigate the circumstances. During his conversation with the juvenile, Officer Diehl smelled the odor of marijuana. This odor of a controlled substance certainly provided Officer Diehl with reasonable suspicion to believe that the defendant possessed marijuana and/or that evidence of marijuana use was present on the juvenile. The Superior Court has found that "the odor of marijuana may, in combination with other circumstances, provide probable cause." *Commonwealth v. Trenge*, 451 A.2d 701, 708 (Pa. Super.

1982)(finding odor of burning marijuana, in combination with a protruding pipe stem, provided probable cause to arrest appellant without a warrant). See also *Taylor v. United States*, 286 U.S. 1 (1932)(holding that odors alone do not authorize a search without a warrant). Generally, the odor of marijuana, without more, will not provide an officer with probable cause. *Trenge*, citing *Johnson v. United States*, 333 U.S. 10 (1948). See *United States v. Ramos*, 443 F.3d 304, 309 (3d. Cir. 2006)("Had the officers smelled marijuana odor in a crowded bar, they would not be justified to pat down every patron on the claim of some particularized reasonable suspicion."). Although cases have held that "where an officer is justified in being where he is, his detection of the odor or marijuana is sufficient to establish probable cause," these cases involved an odor of burning marijuana or a movable vehicle.[5] Notably, there is a distinction to be made between the detection of an odor of marijuana and an odor of burnt marijuana. Here, there was no indication that Officer Diehl detected an odor of burning marijuana and a vehicle was not present.

---

5. See *United States v. Nelson. Jr.,* 2006 WL 2711743 (E.D. Pa. September 19, 2006)(finding the "odor of burnt marijuana coming from within the vehicle..a fresh odor" provided probable cause for a search.). See also *Commonwealth v. Stainbrook*, 324 Pa. Super. 410, 414, 471 A.2d 1223, 1225 (1984)(holding officer was justified in conducting a search of vehicle when he observed furtive behavior and detected the odor of burning marijuana); *Commonwealth v. Pullano,* 440 A.2d 1226 (Pa. Super. 1982)(finding officers that smelled a strong odor of burning marijuana and had heard noises suggesting a party was in progress, had probable cause to make an arrest); *Commonwealth v. Stoner*, 710 A.2d 55, 59 (Pa. Super. 1009)(recognizing that an odor may be sufficient to establish probable cause for a search of an automobile, which had been legitimately stopped for an unrelated vehicle code violation); *Commonwealth v. Stoner*, 344 A.2d 633 (Pa. Super. 1975)(finding probable cause was established where officer observed marijuana seeds and leaves in plain view in car and noted a very strong odor of marijuana).

When Officer Diehl first asked the juvenile about his use, the juvenile did not respond. No constitutional provision prohibits police officers from approaching a citizen in public to make inquiries of them. *Commonwealth v. Cottman*, 764 A.2d 595, 598 (Pa. Super. 2000). See also *United States v. Lockett, III*, 406 F. 3d 207 (3d Cir. 2005)("It is well established that no seizure has occurred when an officer approaches an individual in a public place, identifies himself as a law enforcement agent, asks questions, asks to search a person's bag, or explains that he is conducting a narcotics investigation."). At this point, the interaction fell within the "investigative detention" scenario.

Miranda warnings are necessary where a suspect is in custody and the questioning is by law enforcement officers. *Miranda v. Arizona*, 384 U.S. 436 (1966). See also *Baker, supra*. Juveniles, as well as adults, are entitled to be apprised of their constitutional rights pursuant to Miranda. *In re R.H.*, 568 Pa. 1, 5, 791 A.2d 331, 333 (Pa. 2002). These warnings are required prior to a custodial interrogation. *Commonwealth v. Housman*, 604 Pa. 596, 625, 986 A.2d 822, 839 (2009); *Commonwealth v. Smith*, 575 Pa. 203, 224, 836 A.2d 5, 18 (2003). If a person is not advised of his rights prior to custodial interrogation, evidence resulting from such interrogation cannot be used against him. *Id.* However, the fact that a police investigation has focused on a particular individual does not automatically trigger "custody," thus requiring Miranda warnings. *Commonwealth v. Baker,* 2011 WL 2520214, *5 (Pa. Super. June 27, 2011) quoting *Commonwealth v. Fento*, 526 A.2d 784, 787 (Pa. Super. 1987). See also

*Commonwealth v. Whitehead*, 629 A.2d 142 (Pa. Super. 1993).

A police encounter becomes a custodial interrogation when, under the totality of the circumstances, the detention becomes so coercive that it is the functional equivalent of an arrest. *Commonwealth v. Clinton*, 905 A.2d 1026, 1032 (Pa. Super. 2006). See also *Commonwealth v. Mannion*, 725 A.2d 196, 200 (Pa. Super. 1999). The standard for determining whether an encounter with the police is deemed "custodial" is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. *Commonwealth v. Baker*, supra. A person is in custody for Miranda purposes only when he "is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483 (2009) quoting *Commonwealth v. Johnson*, 556 Pa. 216, 239, 727 A.2d 1089, 1100 (1999). See also *Commonwealth v. Gonzalez*, 979 A.2d 879, 887 (Pa. Super. 2009), quoting *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). See also *Commonwealth v. Whitehead*, 629 A.2d 142, 145 (Pa.Super 1993). The U.S. Supreme Court has stated that "ultimate inquiry is...whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Id.* quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994). The Supreme Court further stated that its decision in Miranda "[w]as not intended to hamper the traditional function of police officers in

investigating crime...General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process." Miranda, 384 U.S. at 477. Although interrogation is police conduct calculated to, expected to, or likely to evoke an admission, *Commonwealth v. Bess*, 789 A.2d 757 (Pa. Super. 2002), not every statement made by an individual during a police encounter constitutes an interrogation. *Commonwealth v. Williams*, 941 A.2d 14, 30 (Pa. Super. 2008). All the circumstances surrounding the encounter must be considered to determine whether a seizure has occurred. *Commonwealth v. Collins*, 950 A.2d 1041 (Pa. Super. 2008). Several factors to consider include the following:

> [T]he number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice' the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked.

*Commonwealth v. Boswell*, 554 Pa. 275, 284, 721 A.2d 336, 340 (1998). See also *Commonwealth v. Williams*, 941 A.2d 14, 30 (Pa. Super. 2008) (factors to consider include the cause for the detention, the detention's length, the detention's location, whether the suspect was transported against his or her will, whether physical restraints were used, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel the suspicions of the police). Additionally, the determination of whether a reasonable person would have believed that he was free to leave becomes an essential

element. It has been frequently explained:

> To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Charleston*, 16 A.3d 505, 514 (Pa. Super. 2011) citing *Commonwealth v. Strickler*, 563 Pa. 47, 58-59, 757 A.2d 884, 888-890 (2000). See also *Commonwealth v. Turner*, 772 A.2d 970, 973 (Pa. Super. 2001).

Here, the juvenile was not in custody as defined in Miranda when he was asked basic questions by Officer Diehl. The determinative question is, however, when Officer Diehl asked questions and made statements about the juvenile's use and possession of marijuana, whether that changed the character of the interaction to custodial. When Officer Diehl first made eye contact with the juvenile, the juvenile looked down and then turned his back towards the officer. At the time, the juvenile had a bag in his hand which may have been a recent purchase. Officer Diehl waited a few minutes and he noticed the juvenile was not leaving the store. Officer Fitzsimmons

asked the juvenile to "come here for a minute," to which the juvenile responded. Officer Diehl, Sergeant Edward Fitzsimmons and three (3) to four (4) other officers were present outside of the store. This type of police presence would only heighten a juvenile's anxiety. Additionally, the juvenile was told that he matched the description of an individual involved in an assault that the officers were currently investigating. Although the juvenile was not handcuffed or physically restrained, he was peppered with questions resulting in these charges.

Officer Diehl pointed questions and made statements to the juvenile indicating he believed the juvenile possessed marijuana. Officer Diehl told the juvenile that he can "make an inference you do have something on you by the way you are not answering me." The juvenile reluctantly admitted to smoking marijuana. Officer Diehl continued his conversation and made a statement to the juvenile that if he was carrying a small amount of marijuana, such as a "dime bag," that he would not be in trouble. The juvenile then admitted that he possessed a small amount of marijuana in his pocket. While the initial questions were general, the clear intent of the remaining questions was to obtain incriminating admissions from the juvenile. The type of investigation changed from an investigation regarding the initial assault to a marijuana investigation. During the interaction, the odor of marijuana did not provide Officer Diehl with probable cause to search the juvenile. The statements and promises made by Officer Diehl, thereafter, changed the character of the interaction from an investigatory detention to a custodial interrogation.

The juvenile was in custody and not issued Miranda warnings when he made statements regarding his use and possession of the marijuana.

The Commonwealth has the burden to establish by a preponderance of the evidence that the challenged evidence is admissible. *Commonwealth v. Hernandez*, 892 A.2d 11, 13 (Pa. Super. 2006). But see Pa.R.J.C.P. 350. The Commonwealth has failed to meet its burden and the statements made to Officer Diehl must be suppressed. Consequently, the juvenile's confession and the results of the search of the juvenile's cell phone should be excluded because they constitute "fruits of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963)(holding evidence acquired by the police through the exploitation of, or by means of, conduct unlawful under the Fourth Amendment is inadmissible in a criminal prosecution); See also *Commonwealth v. Charleston*, 16 A.3d 505 (Pa. Super. 2011).

## ORDER

And now, July 28, 2011, upon consideration of the juvenile's motion to suppress and hearing held in this matter on June 29, 2011; upon further consideration of the "memorandum of law in support of juvenile's motion to suppress" submitted by counsel for the defendant on July 15, 2011;

It is hereby ordered that the motion to suppress is granted.